# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROTECTIVE LIFE INSURANCE COMPANY,<br><br>         Plaintiff,<br>vs.<br><br>ANA BERTA ALVAREZ, et al.,<br><br>         Defendants. | CASE NO. 12-CV-1749-MMA-DHB<br><br>**ORDER GRANTING PROTECTIVE LIFE INSURANCE COMPANY'S MOTION FOR ORDER OF DISCHARGE; GRANTING IN PART REQUEST FOR AWARD OF COSTS AND ATTORNEYS' FEES**<br><br>[Doc. No. 22] |

On January 14, 2013, Plaintiff Protective Life Insurance Company ("Protective") filed a motion for order of discharge and award of costs and attorneys' fees. [Doc. No. 22.] The motion is unopposed. On January 29, 2013, the Court requested a supplemental declaration regarding the purported fees and costs, which Protective later provided. [Doc. No. 24.] For the reasons below, the Court **GRANTS** Protective's motion for discharge, and **GRANTS IN PART** its request for attorneys' fees and costs, subject to a reduction in attorneys' fees awarded.

## BACKGROUND

On December 19, 1988, CalFarm Life Insurance Company ("CalFarm") issued a life insurance policy (the "Policy") in the amount of $100,000.00 to David Alvarez. Pursuant to an agreement with CalFarm's successor, Protective is responsible for paying the Policy proceeds. At origination of the Policy, Decedent's then wife, Teresa Cabrales Alvarez, was listed as the primary

beneficiary. During the course of the Policy, Protective provided a change of beneficiary ("COB") form to Decedent on three separate occasions. [*Complaint* ¶ 10.] At Decedent's death, the Policy remained in full force. Protective believes that Teresa Cabrales Alvarez died on January 6, 1997, and that Decedent died on April 16, 2011. [*Id.* ¶¶ 11-12.] Protective further believes that Decedent's daughter, Defendant Monica Figueroa, was appointed to be the administrator of her mother's estate on or about November 10, 2011. [*Id.* ¶ 13.]

Following Decedent's death, Protective mailed multiple claim forms for the Policy proceeds to Defendant Figueroa. [*Id.* ¶ 15.] Protective received a letter dated June 14, 2011, purportedly signed by Defendant Ana Berta Alvarez, stating that she had not received any claim forms regarding the Policy and that the forms had been sent to her step-daughter, Monica Figueroa. The letter also stated that Decedent intended to make her, his present wife, the beneficiary of the Policy, and that he never changed the beneficiary designation, which lists his first wife, Teresa Cabrales Alvarez. On June 21, 2011, Protective responded that it was instructed to send the forms to Monica Figueroa and that there was no contact information for Ana Berta Alvarez. [*Id.* ¶ 16.] Thereafter, Protective mailed claim forms for the Policy proceeds to Defendant Alvarez on August 1, 2011, August 20, 2011, and September 29, 2011. Those forms identify the beneficiary of the Policy to be the Estate of David Alvarez. [*Id.* ¶ 17.] Protective also mailed forms on four separate occasions to Maria Estela De Orduna (who represented to Protective that she was an attorney representing Defendant Alvarez in this dispute). [*Id.* ¶ 18.]

Protective believes that Defendant Alvarez signed and submitted a Claimant Statement to Protective dated April 29, 2011, and another dated July 23, 2011, for the life insurance proceeds due under the Policy, and a copy of Decedent's death certificate. On or about September 19, 2011, Protective issued a letter to Defendant Alvarez's attorney, Mrs. Orduna, explaining that Defendant Alvarez was not a named beneficiary of the Policy, and therefore Protective could not release any information about the Policy to her. [*Id.* ¶ 21.] Protective received a letter purportedly from Defendant Figueroa dated January 3, 2012, in which she demanded that the Policy proceeds be released to the Teresa Alvarez Estate. [*Id.*] On February 1, 2012, Protective submitted letters to Defendant Alvarez and Defendant Figueroa, in which Protective explained that if a compromise

was not reached concerning the beneficiary dispute, it would interplead the funds, and would seek its costs and fees for interpleading the action. [*Id.* ¶ 22.]

Protective received a phone call on February 7, 2012, from Douglass Webb, the attorney for Defendant Teresa Alvarez Estate. During that call, Protective explained that since Ms. Alvarez predeceased the Decedent, the proceeds would be payable to Decedent's estate. [*Id.* ¶ 23.]

On April 11, 2012, Protective received representations from Thomas Murray, attorney for the David Alvarez Estate, that the four parties were attempting to settle their disputes regarding the Policy proceeds. However, on June 26, 2012, Thomas Murray confirmed that the parties were unable to reach an agreement. [*Id.* ¶ 25.] Thus, on July 16, 2012, Protective filed the Complaint, alleging it could not determine the proper beneficiary or beneficiaries of the Policy. [Doc. No. 1.] Simultaneously with the filing of the Complaint, Protective deposited $103,821.92 with the Clerk of the Court, representing the proceeds payable under the Policy with interest. [Doc. No. 4.]

On July 19, 2012, the Complaint and summons were personally served on Defendants Figueroa and the Teresa Alvarez Estate. On July 28, 2012, the Complaint and summons were personally served on Defendant Alvarez. Defendants failed to file responsive pleadings, and the Clerk of Court entered defaults against Defendants Alvarez, Figueroa, and the Teresa Alvarez Estate on October 22, 2012. The only defendant to appear in this action, the David Alvarez Estate, was served with the Complaint on July 23, 2012, and filed its answer on August 24, 2012. Now, Protective seeks a full discharge, a permanent injunction against further actions by Defendants against Protective, and recovery of Protective's attorneys' fees and costs.

## DISCUSSION

### I.     Interpleader Actions

"Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000). Interpleader is appropriate even where there is only a possibility of adverse claims to a fund. *Minnesota Mutual Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999). Interpleader is a remedial device to be liberally construed. *State Farm & Casualty Co v. Tashire*, 386 U.S. 523, 533 (1967).

1    "There are two steps to an interpleader action.  The first is determining whether the
2 requirements of interpleader have been met."  *Hartford Life Ins. Co. v. Banks*, 2011 U.S. Dist.
3 LEXIS 91059 at *5 (S.D. Cal. August 15, 2011) (citation omitted).  "The second step is to
4 'adjudicat[e] the adverse claims of the defendant claimants.'"  *Id.*  (*quoting Western Conf. of*
5 *Teamsters Pension Plan v. Jennings*, Case No. C-10-03629 EDL, 2011 U.S. Dist. LEXIS 71266 at
6 *5 (N.D. Cal. June 6, 2011) (*citing N.Y. Life Ins. Co. v. Connecticut Development Authority*, 700
7 F.2d 91, 95 (2nd Cir. 1983) ("Normally an interpleader action is concluded in two stages, the first
8 determining that the requirements of [federal jurisdiction] are met and relieving the plaintiff
9 stakeholder from liability, and the second adjudicating the adverse claims of the defendant
10 claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at
11 one time.").  "Discharge [of an interpleader] is normally granted absent bad faith by the
12 stakeholder."  *Jennings*, 2011 U.S. Dist. LEXIS 71266 at *5 (*citing New York Life Ins.*, 700 F.2d
13 at 96).  A district court may delay or deny discharge of the stakeholder if there are "serious
14 charges that the stakeholder commenced the action in bad faith."  *Mendez v. Teachers Ins. &*
15 *Annuity Assoc.*, 982 F.2d 783, 788 (2nd Cir. 1992).
16    It is undisputed that Protective has deposited the full amount of David Alvarez's life
17 insurance proceeds with the Court.  None of the parties has challenged the fact that Protective is a
18 disinterested stakeholder nor asserted any claims against Protective.  As a disinterested
19 stakeholder, Protective has fulfilled its obligations under its life insurance policy.  Because
20 Protective faces competing claims to David Alvarez's life insurance proceeds that might expose it
21 to multiple liability or litigation which would result in Protective incurring significant attorneys'
22 fees and because Protective has instituted this interpleader action in good faith to resolve the
23 competing claims, it is entitled to be discharged from liability.  *First Interstate Bank, N.A. v. U.S.*
24 *By & Through I.R.S.*, 891 F. Supp. 543, 547 (D. Or. 1995).

25 **II.    Attorneys' Fees**

26    Plaintiff's motion asserts that Plaintiff should be awarded its costs and attorneys' fees.
27 "Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an
28 interpleader action."  *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984)

1  (citation omitted).  "The amount of fees to be awarded in an interpleader action is committed to the
2  sound discretion of the district court." *Trustees of Directors Guild of America-Producer Pension*
3  *Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (affirming a district court's award of
4  $3,000.00 in fees when the stakeholder had requested $97,000.00).

5  The Court "undertakes a lodestar analysis to guide its determination regarding the
6  appropriate amount of attorneys' fees and costs." *Allianz Life Ins v. Agorio* 852 F. Supp. 2d 1163,
7  1166-67 (N.D. Cal. Feb. 10, 2012).  Fees that are compensable include "preparing the complaint,
8  obtaining service of process on the claimants to the fund, and preparing an order discharging the
9  plaintiff from liability and dismissing it from the action," as well as seeking entry of default
10 judgment.  *See Tise*, 234 F.3d at 426-27; *Wells Fargo Bank v. PACCAR Fin. Corp.*, 2009 U.S.
11 Dist. LEXIS 9856 at *2 (E.D. Cal. January 27, 2009).

12 Plaintiff requests attorneys' fees and costs in the total amount of $7,318.76.  This includes
13 fees for counsel Andrea Anapolsky at $305 per hour, fees for counsel Lawrence Butler at $490 per
14 hour, and costs in the amount of $883.26.  [Doc. No. 24, Anapolsky Decl.]

15 As noted above, attorneys' fees in an interpleader action are limited to time expended on
16 preparing the complaint, obtaining service of process on the claimants to the fund, obtaining
17 default judgment, and preparing an order discharging the plaintiff from liability and dismissing it
18 from the action.  *Tise*, 234 F.3d at 426-27; *PACCAR Fin. Corp.*, 2009 U.S. Dist. LEXIS 9856 at
19 *2.  Based on those limitations, the Court has reviewed the billing records submitted by Ms.
20 Anapolsky on behalf of Plaintiff and determined that charges for calendaring, reviewing and
21 exchanging emails and other correspondence, and reviewing the Court's docket are not
22 appropriate.  *See Transamerica Life Ins. Co. v. Shubin*, 2012 U.S. Dist. LEXIS 95399 at *27 (E.D.
23 Cal. July 10, 2012).  Thus, it is appropriate to reduce the hours billed by Ms. Anapolsky and Mr.
24 Butler, as there are entries for these services that are not reasonable for an interpleader action.

25 For Ms. Anapolsky, 4.60 hours should be deducted as follows: 3.6 hours spent preparing
26 and exchanging emails and other communications; 0.6 hours calendaring; and 0.4 hours reviewing
27 the docket.  [*See* Doc. No. 24, Anapolsky Decl., Ex. 1, deductions should be made for entries or
28 portions of entries for dates of service on June 26, 2012 (0.4 hours); July 17, 18, and 31, 2012 (0.1,

1  0.2, and 0.2 hours respectively); August 1 and 2, 2012 (0.2 and 0.3 hours respectively); November
2  5, 6, 7, 14, and 15, 2012 (0.5, 0.4, 0.2, 0.2, 0.1 hours respectively); December 19, 2012 (0.2
3  hours); January 4, 7, and 11, 2013 (0.2, 1.1, 0.3 hours respectively).]  As for Mr. Butler's hours,
4  out of the 0.8 hours requested for completed work, 0.3 hours should be deducted as they relate to
5  reviewing a five-line order on the Court's docket.  [*See id.*, deduction should be made for entry on
6  November 15, 2012.]

In sum, Plaintiff should be awarded attorneys' fees as follows:

| Ms. Anapolsky |  |
|---|---|
| Hours | 16.5 |
| Rate | $305.00 |
| **Total Award** | $5032.50 |

| Mr. Butler |  |
|---|---|
| Hours | 0.5 |
| Rate | $490 |
| **Total Award** | $245.00 |

Accordingly, Plaintiff should be awarded attorneys' fees in the total amount of $5,277.50 ($5,032.50 plus $245.00).

**III.    Costs**

Plaintiff requests costs in the amount of $883.26 for filing fees, reproduction costs, and courier/messenger fees.  This amount is reasonable and should be awarded.

<u>CONCLUSION</u>

Based on the findings herein, the Court **HEREBY ORDERS**:

1. Pursuant to 28 U.S.C. § 2361, Protective is hereby discharged from all liability on or arising out of:

    (a) life insurance policy No. 00200223689 (the "Policy") issued by CalFarm Insurance Company, which Protective co-insures and administers, and from which it is responsible for paying properly payable death benefits; and

    (b) the rights and obligations of the parties to this action with respect to any and

all proceeds under the policy.

2. The Policy is void and of no further force and effect;

3. From the money that was deposited by Protective with the Clerk of this Court, Protective is awarded $6,160.76 as costs and reasonable attorney fees incurred in bringing and maintaining the present action;

4. Defendants Ana Berta Alvarez, as an individual, Monica Figueroa, as an individual and in her capacity as administrator of the Estate of Teresa Cabrales Alvarez, and Theresa Hawkins as administrator of the Estate of David Alvarez, are permanently enjoined from instituting or prosecuting any other actions against Protective regarding the Policy; and

5. Protective is dismissed from this action with prejudice.

**IT IS SO ORDERED.**

DATED: February 11, 2013

*/s/ Michael M. Anello*

Hon. Michael M. Anello
United States District Judge